FRANK LUKIS, PETITIONER-DEFENDANT, IN CERTIORARI, v. ARMOUR & COMPANY, PROSECUTOR, IN CERTIORARI.

Argued May 8, 1940—Decided June 10, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the petitioner-defendant, *Samuel E. Barison* (*Frederick E. Riethmuller,* of counsel).

For the prosecutor, *John L. Ridley.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The writ of *certiorari* in this case was allowed to review a judgment of the Hudson County Pleas, which affirmed the determination in the Workmen's Compensation Bureau.

The petitioner, Lukis, who in 1932 was found to be suffering permanent total disability, applied to the bureau pursuant to the statute (*R. S.* 34:15-12, sub-section B) for further compensation, which after formal hearing was awarded him. The bureau directed that such compensation be paid each week starting from the date of last payment under its previous judgment, the term of which was 400 weeks, and continue during the lifetime of the petitioner or until it appeared that the petitioner might be "rehabilitated" in accordance with the legislative intention expressed in the statute, *supra.*

The facts are brief and undisputed. Compensation was paid under the order or judgment of the bureau of February 3d, 1932, and was continued up to the date of the last payment, December 2d, 1938, after which the petitioner submitted himself for examination to the New Jersey Rehabilitation Commission. That the petitioner is still totally and permanently disabled is not disputed. He suffered and still suffers from pulmonary tuberculosis of both lungs "with cavitation." The employer argues that no additional compensation should be allowed because the petitioner failed to submit himself "to the Rehabilitation Commission for physical and vocational rehabilitation" before the expiration of the 400 weeks of permanent disability payments, *i. e.,* prior to the date of the last payment, under the judgment of February 3d, 1932, and that such failure bars further compensation, relying upon the statute—*R. S.* 34:15-12 (B). That part of the statute (and we quote only the pertinent sentence) reads as follows:

"* * * This compensation shall be paid for a period of four hundred weeks, at which time compensation payments shall cease unless the employee shall have submitted to such physical or educational rehabilitation *as may have been ordered by the Rehabilitation Commission,* and can show that because of such disability it is impossible for him to obtain wages or earnings equal to those earned at the time of the accident * * *." (Italics supplied.)

Relying on this statutory language, the prosecutor contends that unless the petitioner, on his own account, submitted himself to physical or educational rehabilitation he automatically is disqualified from receiving any further compensation. We discern no such legislative ultimatum or intention in the statute. In cases of permanent total disability it is undoubtedly the policy of the state as expressed in the Compensation law that a disabled workman should be rehabilitated if that can be accomplished. And in cases where physical or educational rehabilitation is ordered by the commission, and there is a rejection of same or a conscious failure to accept the benefits of such attempted rehabilitation, compensation, under those circumstances, shall cease when

the 400 week period shall have expired. This part of the statute is directed at malingerers and those generally who refuse to be helped physically or educationally to partial or complete rehabilitation so that they may again become wage earners. But compensation in the case of those suffering permanent total disability does not cease under this section of the statute after the expiration of the 400 week period unless it appears that the disabled person has rejected the rehabilitation that had been ordered by the commission.

The plain implication of the statute is that before or at the expiration of the 400 week period an examination of the incapacitated workman should be made by the commission with a view of determining whether there is a chance for rehabilitation and there is the further implication that if rehabilitation is not ordered after such investigation and inquiry, this amounts to a determination that it would be futile. In the case before us it does not appear that such physical or educational rehabilitation was ordered at any time by the Rehabilitation Commission, but it does appear that the commission had a record of this case and was attending to its duty of looking after it; for the employee testified without contradiction that he received a letter from the commission after the date of the last payment of compensation and that thereupon he reported to and was examined by that commission; and from the further fact that that body, after making the examination, made no recommendation and did nothing further in the premises. It was fairly to be inferred that it was found that the disease from which petitioner was suffering had progressed so far that efforts at rehabilitation would be futile. Another section of this statute supports our view of the legislative intention and policy on this issue. That section (R. S. 34:16-8) provides that the commission shall have power to make surveys "to ascertain the number and condition of physically handicapped persons within the state; * * * to arrange with all public and private hospitals for reports of all persons under treatment for injury or disease that may permanently impair their earning capacity; to arrange with the commissioner of labor for reports of all injuries received by employees in the course of employment which may result in permanent disability.

"The persons thus known to be injured or otherwise physically handicapped shall be promptly visited by representatives of the commission who shall make record of their condition and report to the commission. The commission shall then determine whether the person is susceptible of rehabilitation.

"Such persons as may be found susceptible of rehabilitation shall be acquainted by the commission with the rehabilitation facilities offered by the state and the benefits of entering upon remunerative employment at an early date *  *  *."

These statutes, all in *pari materia,* should be considered as one organic legislative plan to take care of the physical and economic loss unfortunately caused by injury and certain diseases in industry. Here the employee had no notice from the commission to report for educational or physical rehabilitation except the instance stated above and he did report as directed.

Perhaps the views expressed are enough to dispose of this element of the case but we consider it not inappropriate to say further that the total and permanent disability of the claimant is not questioned. The medical testimony for the petitioner—none was offered by the prosecutor—proved that Lukis presently suffers 100 per cent. disability; that he had had medical and surgical treatment at intervals since the time of his injury in 1930; that he has no reasonable expectation of rehabilitation and in the judgment of his physician cannot be rehabilitated at this time; that he has submitted to surgical operations, wherein a partial collapse of the right lung, as well as the left, was done, in an effort to improve his condition and that further surgical operation would endanger his life. The conclusion that the petitioner at the present time still suffers a permanent and total disability is inescapable.

But it is further argued that the referee erred in awarding further compensation because he based his judgment in part at least upon the report of the Rehabilitation Commission, which report was not verified, not introduced in evidence, not seen by the prosecutor, and was the veriest hearsay. In his written conclusion the referee said that he found and deter-

mined that the petitioner was unable to perform any type of work and that it was impossible for him to obtain wages; and this was based on the testimony of the petitioner. He further found from the testimony of petitioner's physician that the petitioner "is unable at the present time to be rehabilitated," adding "and from the report of the New Jersey Rehabilitation Commission." It is evident that the learned referee had seen the report of the Rehabilitation Commission by whose doctors Lukis had been examined after the date of last payment, on February 16th, 1939.

The issue, of course, may not be determined on hearsay testimony. We have no way of knowing what the report of the commission contained but it is indisputably clear that the referee had no occasion to rely upon it. The testimony of the claimant and his doctor is all that we find in the state of case and from a reading of this testimony, unimpaired by cross-examination and undisputed by any evidence from the employer, we find the fact to be that the petitioner still suffers disability, total in character and permanent in quality, and that presently he is unfit for rehabilitation.

The judgment of the Pleas will be affirmed, and the writ of *certiorari* dismissed, with costs.